All right, let me try something else, judges. You guys hear me? I can't hear anything. Okay. I'm sorry. We can hear you now. Are you able to hear us now? You're coming through loud and clear, but can you hear us? All right. I'm going to ask him to dial in with his phone for the audio portion. Okay. Oh, I can hear now. I'm so sorry about that, everyone. You're able to hear now? Despite my still somewhat of a lot. Yes, Your Honor. Sorry about that. All right. Well, and Mr. Cooley, you can still you can still hear us? Yes, loud and clear, Your Honor. Okay. Then we're ready to call the case. Williams v. Superintendent Mahanoy SCI. Mr. Cooley, I understand that you've reserved three minutes for rebuttal. Yes. So we'll go ahead and put that on the clock and you can go ahead and proceed. Craig Cooley for Tyrone Williams, Your Honor. This case concerns a trial counsel ineffectiveness plan that was not raised during Mr. Williams' initial review of piece of rape proceedings. And it's a fairly straightforward claim. The court has read the briefing. There was a shooting that happened on May 5th, 2009, where an individual named Brandi Granson was shot and killed. Trial counsel's defense of trial, and I want to make this clear, we're not criticizing the fact that trial counsel did not present an alibi defense. There are complications with that defense based on the facts. If you look at Tyrone Williams' recorded statement from May, do you have a question? Yeah.  Yes. So I want to take you to what is, you know, speaking for myself, a matter of primary concern. You've said, indeed both sides have said, this case doesn't need to go back, shouldn't go back for any fact finding. And there's indeed a question whether it could go back for any fact finding given 2250-482. But if there isn't, well, let me put it this way. In order for you to win, we would have to not only be able to look at the record and say, hmm, deficient performance, but also say prejudice. And so my question to you is, well, there's multiple, but my first question to you is, is the prejudice question that we ask when dealing with the Martinez question, is that the same prejudice question that we would ask when we're asking whether, in fact, there was trial counsel ineffectiveness at a level that would warrant a grant of habeas? Do you understand what I'm asking? Absolutely. And it's a good question. And in the letter brief that I filed, you know, based on the court's order requesting additional briefing, that was my position, is that when you do the Martinez analysis, the deficient performance problem, you have to look at it. You have to say, okay, did PCRA counsel overlook a substantial trial counsel ineffectiveness claim? And the prejudice under Martinez, to answer your question, is different than strict on prejudice. It's a lighter burden, right? Yes, exactly. And it's based on the COA standard, you know, where reasonable minds, reasonable jurors could disagree that this component was adjudicated incorrectly. So we're going to provide further consideration of that claim. Okay. Good. So assume we agreed with you on all that and we thought there's cause, we have, and therefore we can excuse the procedural default given Martinez, and we get to the underlying trial counsel ineffectiveness. Yes. At that point, the record stands as what it is. Yes. And indeed, the ineffectiveness of post-conviction counsel necessarily leads to an undeveloped factual record, right? Yes. There is no, yeah, PCRA counsel did not present the facts regarding George Elishon's testimony and so forth, yes. So how, on the basis of the facts that were before the state courts, not what we know now, but on the basis of the facts that were before the state court, and by the state court I mean Williams' state court, not Burton's state court, Williams' state court, on that basis, how would we be able to say strickland prejudice? So let me see if I follow you. Are we talking about the actual underlying claim? Right. Once we get over the default. Yeah. Assume, right, assume we used Martinez and we penetrated through post-conviction relief and said, yeah, it's all right, default is excused. Could I back up? In order to decide Martinez, don't we need further evidence? For all we know, trial counsel and PCRA counsel tried to find Mr. Rochon. Maybe Mr. Rochon's dead. Maybe they investigated and he recanted his testimony. We don't know why he wasn't called. And it's very curious because his superior court opinion came down right before their trial, and it's also curious because at the end of the trial, trial counsel asked for an instruction on involuntary, which is kind of crazy. If he knew he didn't have the evidence, maybe there's a reason he didn't have the evidence. So I don't know whether we can say that the claim has some merit, even for purposes of Martinez, because we don't know why he didn't do this. I will, to answer that question, I'll simply tell you what Mr. Williams has told me repeatedly. My first question was, yes, obviously. I'm sorry, he told you this informally? Yeah, it's not in the record. Well, then that's not here. It's not before us. He would need to testify to that. And if he testified that, gee, it was just too late, it was a different thing, I just decided to go another way, that's one thing. But if he said, I fully investigate, Rochon was not willing to testify, he'd flown the coop, I couldn't find him, I mean, we don't know. So for Martinez, don't we even need a hearing? Right. So he can tell a court what he apparently told you. Yeah, if the court deems the record inadequate to adjudicate the Martinez claim, then the court can obviously remand, right? When you say the court can obviously remand, you just kind of leaped over 2250-4E2. Why is that obvious? Why doesn't 2250-4E2 stand as a gigantic bulwark against that? I use the word obviously because I argued before the panel on May 25th in another 2250-4 case, and the first question they asked me was, is it ineffective in this claim? It wasn't a Martinez claim, but it was still a Strickland claim, and they asked me about a remand regarding equitable tolling. And based on the court's questions to me and based on my research, the court has the right to remand. Now to the 2254-E consideration. Well, we have held... 2254-E, as I argued in the letter brief, 2254-E by its text is limited to an evidentiary hearing, right? That goes with... Well, to a hearing on the essential habeas claim. I mean, we've held in Kristen v. Brennan that the plain meaning of 2254-E2 introductory language doesn't preclude federal hearings on excuses for procedural default at the state level. So the issue isn't whether there can be a Martinez hearing. The issue is whether that evidence could then be used in the case in chief. Isn't that... Yes. That was before the Supreme Court, in fact. Yes. If the court granted a remand, which has been done in the Richardson case, which I cite in my letter brief, it's a complicated procedural history, but that is a remand from Martinez where the court... SCOTUS remanded back to this court. This court remanded back to this court. The district court held a federal evidentiary hearing where all three attorneys relevant to the Martinez claim testified. Now, the district court ultimately denied relief on that claim, but this court on appeal said they considered those facts and granted Richardson sentencing relief. And why should we not... To see if this claim has merit for purposes of Martinez. Of course, then the issue is if it does, if counsel is deemed to have acted unreasonably or whatever, then the issue would be if the district court can consider that as part of the underlying habeas case. Right. So go to that. Assume that you got everything you wanted, like with the hearing on the Martinez piece. Okay. Where do you go from there? Because what does 2254E2 say about us adding to state court record? Well, 2254E states that there's two components. One is a diligence component, which he could overcome based on PCRA counsel effectiveness. And the other component is this clear convincing evidence standard. And that, I would argue, is in tension with Martinez. Because when Martinez was issued, it was issued eight years after Holland. And I'm not disputing what was said in Holland. Holland clearly says that an effective PCRA counsel can't constitute cause. And Holland was based on Coleman, which for years was the law that if you defaulted the claim in PCRA, I mean... But those are all dealing with judge-made law, right? That's all judge-made law. We're talking about a statute here. If the Supreme Court of the United States meant to say, you know what? We know Congress said what it said in 2254E2. But we don't care, really, because in order to give effect to our Martinez decision, we are sub silencio overruling Holland. Don't you think they would have not done it sub silencio? Like, there's this idea that the court doesn't hide elephants in mouse holes. It would have made plain that it thought there was an avenue, despite 2254E2, to supplement the state record. I would argue that it's silence made clear that, based on the way it's rewarding, again, the most important right a criminal defendant has is the right to effective counsel. If you're not going to provide him an avenue to litigate that form under a reasonable standard, basically what the court is interpreting is that every ineffectiveness in this default in state court, you'd have to prove that trial counsel's ineffectiveness, you'd have to meet this standard convincing actual innocence standard. Which, there are many cases in effectiveness that it's not about actual innocence. It's about, in this case in particular, it's about the degree to which he was convicted. There was substantial evidence in the case. Is he actually innocent of first degree murder? It's an incredibly high standard. But isn't Congress entitled to set the standard? Yeah, they set the standard, but then Martinez is in conflict. They didn't say anything. And again, I would refer back to the Richardson opinion. Hasn't the Supreme Court specifically... Isn't Richardson actually innocent? How did Richardson get... Judge Porter's got a question for you, Mr. Porter. Hasn't the Supreme Court specifically said that Martinez didn't purport to overrule or displace Coleman and Holland? They overruled the portion of Coleman that refused to recognize cause when initial review post-conviction counsel was ineffective for failing to raise a substantial trial counsel effectiveness. They did, in fact, overrule that portion. And they were concerned with what I was talking about. It's like, your most important right at trial is effective counsel. If I don't have a form... The first time in Pennsylvania you can raise that. In this type of case where you need off-the-record fact development is post-conviction. Mr. Coleman... Go ahead. I'm curious. The cert petition before the Supreme Court wants the court to say that... Not that you can't hold a Martinez hearing, but you can't use what the facts adduced in the Martinez hearing in connection with the underlying new claim, if you will. But 2254 to me says, if the applicant has failed to develop the factual basis of a claim in state court proceedings, which says to me, it has made a claim in the state court proceedings, but hasn't sufficiently developed it, the court shall not hold an evidentiary hearing on the claim. My reading of that is that this has to do not with a Martinez situation, but with another bite at the apple for something where they didn't sufficiently develop it when the claim was raised initially in the proceeding. And I think I had a case of Marshall where we did send it back to Judge Arenas and we were slapped on the wrist because, you know, we didn't think there was enough evidence, but they said, well, you can't adduce more. The claim was already made. Does 2254E2 actually apply to whether the district court can consider the Martinez evidence in connection with a brand new claim? I mean, it would seem to me it has to, or it's a nullity, or the whole idea of deciding or passing through Martinez is, you know, a nullity. I agree. And I, again, refer back to the Richardson. How do we get the Richardson result where there's a hearing with facts that weren't presented to the state courts and those facts were used to give relief, sentencing relief to Richardson? So why shouldn't we at least in the first instance remand for the district court to hold a Martinez hearing? And there was a remand. And I think the question, the big question is, so we have a hearing, we get these facts, what can we do with those facts? If I'm correct in the court's questioning at this point is, what are we going to do with facts? We don't need to determine that. We'll let the district court worry about that in the first instance. Exactly. The district court, I guess we could brief the issue and say, you know, 2254E2 does not prevent the courts from considering these facts. I would cite the Richardson. I would cite the text of 2254E. And I would cite to the rationale used in Martinez. Again, so... Okay. We got you. We got you, Mr. Cooley. We'll have you back on rebuttal. Thank you, Your Honor. And Mr. Lysett, have I said your name right, sir? Absolutely perfect, Your Honor. Yes, Your Honor. May it please the court and good morning. My name is Ryan Lysett. I work at the Dauphin County District Attorney's Office. I'm here on the respondent's behalf. I don't think that this matter really needs to proceed further on the record that we have here. I don't think a remand is necessary. I don't believe that there was an error with the Roshan testimony. At the end of the day, this testimony, if it came in, it would have added another layer of consciousness of guilt which could have hurt. At the end of the day, maybe it would have gotten this guy off because it certainly freed Mr. Burton from a murder conviction. So I don't think you're going to get a lot of traction. I'm just speaking for myself by saying, Roshan, you know, that's a nothing murder. Because the co-defendant maybe literally got away with murder. I don't know. But certainly had a murder conviction overturned precisely because of Roshan's testimony. So instead of saying Roshan's not much, why don't you take on the question of whether there was deficient performance and whether there was, for Martina's purposes, a claim of prejudice with, quote, some merit. Yes, Your Honor. I do, not to get any further, and I wasn't totally negating Roshan's testimony. But I do think that based on the record that was established, enough evidence came out that could have supported the defense regardless. You know, the medical testimony made it equally possible that the victim and the shooter were either approaching each other or running away. But there was no evidence as to sequence at all. None as to... You couldn't say. And so without an evidence as to sequence, it's totally, you Whereas Roshan provides the evidence that Grantham shot first. Your Honor, and I know that up until this point in proceedings, it's pretty much been assumed by everyone. I didn't do the state court proceedings here that the victim possessed this .40 caliber gun. And I believe that's just an assumption. It was found right beside him. Sure, but so were .45 caliber casings. And so one of the assailants was likely next to him as well. So let's say that... Assume for the sake of discussion, we're not interested in the possibility that the jury could have still found for the prosecution. What we're interested in is whether this evidence Roshan could have provided would have raised or could have raised a reasonable doubt in a juror's mind. And therefore, failing to call Roshan was deficient. And therefore, there's some merit because Williams might have got off. Assume all of that so that we're not arguing about, you know, it's possible to find that the gun found right next to the victim wasn't really the one that the victim was shooting.  And the legal question is, why was Roshan shot? Precisely is, on this record, why isn't there enough to say both deficiency and some merit to the underlying ineffectiveness of trial counsel claim? Sure, Your Honor. There were two other witnesses that did not testify as to any kind of break in the shooting. There was the serial nature, basically, in all the witnesses' testimony. Burgess' testimony said they basically all kind of happened in succession. Lynch, who was an Army veteran and was able to differentiate between the calibers, said they have. So it's almost... Yeah. Now you're continuing to argue, but just with different evidence, that there's still, there was evidence from which somebody could have found for the prosecution and not for the defense. I'm trying to get you to focus. And accept for the sake of argument that we thought the same evidence that got Burton off might have gotten Williams off. Accept that for the purposes of argument. By definition, does that not put you in a position where it's tough to say, hmm, it was not deficient performance to leave Roshan out of the mix and not call him? I'm sure there is a juror or a group of jurors that, you know, that could hit home with. And it is always difficult to kind of go inside the mind of a juror and, you know, determine why the juror decides things a certain way. But I leave open the possibility that if Roshan testified in a similar manner as he did at Burton's trial and that we're similarly situated factually with the whole matter, that yes, it could make a difference. Well, they were similarly situated factually. You can make an argument that Burton's case presented a different legal issue. That's a whole different matter, right? But they were certainly similarly situated factually because factually, it's all the same operative set of facts. It's totally... I disagree, Your Honor, very respectfully. And I'm so sorry. I don't mean to... I really don't mean to be disagreeable here. But I just view it differently. And, you know, one was across the street. One was 20 feet away. The medical testimony said there was this grouping of .45 caliber shell casings right next to the victim where the victim's .40 caliber shell casing was. It's likely, I mean, casings do jump when they're ejected from a non-revolver. But it's likely that one was next to him. Why is that different between Burton and Williams? You can make that same argument about Burton, right? Well, Burton was the one with the conflict with the victim who sold him basically a third of the ounce that he promised him. So it was really between those two. Williams was there. But the trial counsel was sticking to this alibi defense, which is rather bizarre seeing as he didn't produce any alibi witnesses and Williams' testimony was totally inconsistent on alibi. He wasn't urging a self-defense. Only at the end of the evidence did he ask for a ruling and the court said there's nothing in here that would support it. So whatever you're saying the jury might find in these casings doesn't seem to be in the case. Whereas Rochon would have put it squarely in the case. And under Workman seems like the better of the we need an explanation as to why in heaven's name he wouldn't have done that and thrown the alibi defense away. Rochon also did testify that the defendant was fleeing the scene too, which would be a hurtful aspect as much as we're adding a helpful aspect to his testimony. Yeah. Most people who run away from gunshots. Well, if he was defending himself, he, you know, presumably would want to make a record of it with law enforcement. I'm not so sure that's true, but leave that aside. Let's just ask the question. The district court applies Commonwealth versus Clark to say there's no prejudice here. That's a, that is a state law, not a federal precedent. And it, and it has a five factor test, which seems to be more rigid and strict than Strickland is. If why, why wasn't it error for the district court to say, you know what? Under Commonwealth versus Clark, there's no prejudice. Instead of looking at Strickland, which is the governing law and asking the prejudice question. I think it not only goes to the prejudice prong, but also the reasonable basis of trial trial council action prong. If you know, it's happened before where a case was overturned and there was a retrial and all this evidence that the person pointed to, they never put these witnesses in a chair for PCA hearing. They never put them in a chair at a federal habeas hearing. And by the time of the retrial, we're having basically the exact same trial that happened the first time. And so that doesn't, I'm, I'm. Let me, let me put it to you. Let me put it to you again, Mr. Lyson. The governing standard is Strickland. The district court didn't apply Strickland applied Commonwealth versus Clark. Why is that not error? Because I believe the standards are compatible. And I believe that these extra requirements don't fly in the face of We said in grand versus Lockett that we didn't think that was so that in fact, yeah, you don't have to be. Clark says you gotta have a witness who's ready and willing to testify and grand versus Lockett says, that's just not. So that's what compulsory process is all about. They don't need to be ready and willing. You can haul them into court when they're not ready and willing and make them testify. And that's what the sixth amendment says too. So how can Commonwealth versus Clark be consistent with Strickland when it imposes a burden that the sixth amendment specifically rejects, you don't have to have a ready and willing witness. You just have to have compulsory process. Then there's really no point to the law because the witness show up and not offer any helpful testimony. Don't worry. Get Mickey. What do you mean? They'll, they'll just show up and not offer any helpful testimony. You make them testify. You're, you're assuming that because they don't want to testify, they'll perjure themselves, but we assume the exact opposite. You put somebody in the witness chair, whether they want to be there or not, and they'll tell the truth. Isn't that the way the law works? No. Oh, not in actuality. Your honor. Well, you're telling me that the legal presumption is unwilling witnesses perjure themselves. Isn't that, isn't that, isn't the presumption precisely the opposite that whether you want to be there or not, once you're in the witness stand, unless there's proof that you're perjuring yourself, we assume you're going to give truthful testimony. But what if you don't give any testimony? What if you just elect to go to contempt instead? I, I guess that's. What if you develop a Fifth Amendment, a legitimate Fifth Amendment privilege? I guess, I guess there's always the possibility that somebody would go to jail, but under compulsory process isn't the presumption. I mean, that's the whole point of having compulsory process. You can make people testify when they don't want to. Yes, your honor. But at least in Dauphin County, that presumption is quite often rebutted. Our witnesses are unwilling around here. So maybe it's nicer to practice elsewhere. But that doesn't mean that we then adhere to Clark. We adhere to federal law because compulsory process is a constitutional principle. What happens in actuality and once you get a courtroom is beside the point as to what law we apply. Compulsory process is part of our constitutional guarantee, Clark notwithstanding. And we've held that we apply the federal law in these proceedings. So the fact that someone may appear and take the Fifth Amendment or be recalcitrant or recant is beside the point. It's the principle that matters. Your honor stated during opening argument that, you know, a witness could even die or not be located. So, yeah, there's compulsory process. That is an issue that probably we need to look at for purposes of Martinez because if Rochon died or recanted or was, you know, couldn't be found, then maybe there isn't some merit to the fact that counsel was deficient because counsel did what he had to do, couldn't find it, and then he wasn't that effective. So that has to go to the Martinez issue, but not to the case of what law do we apply. And I believe the standard even benefits the defendant. If they get this witness on the stand at a post-conviction hearing, you have prior testimony assuming that witness then subsequently becomes unavailable or invokes a privilege. So it doesn't work to the defendant's detriment either. Well, on the other hand, if we determine that he was totally unavailable, then counsel should have used his prior testimony at the Williams trial. So that's another issue. And I believe the court is pushable factually with the two individuals. It doesn't affect whether Clark is applicable because it just isn't. And the opportunity for cross-examination would have been different. Not really. Well, that's to be determined. Assume Martinez does excuse the procedural default. We're not sure there's enough evidence in the record at this stage for us to conclude trial counsel was ineffective. What happens next? I believe you – I'm sorry, Your Honors. Did you say you remand for a hearing or do not? That's the question. That is the question. Can we even do that? Can we do that? Under, you know, 2254, I don't believe that any of the exceptions are met. That's the Commonwealth's position. I don't – I think the hands are tied. So the Supreme Court has granted cert in this Ninth Circuit case, Shand against Ramirez. If they overturn the Ninth Circuit, as they might, then how does that affect what we're deciding here? I guess the result would be in the alternative. We could have a Martinez hearing and try to trap witnesses down. Why can't you have a Martinez hearing even though there's 2254-E2? In other words, you're not adding to the state record at that point for purposes of Strickland and deciding whether there's ineffective assistance of trial counsel. You're only asking the question whether the Martinez standard itself has been met. And why isn't that separate and apart and different from what 2254-E2 is protecting against? I can't come up with a case name off the top of my head, but I do believe that that has happened on something that I've been involved with. Yeah, Richardson. Happened in Richardson, right? I don't know if that was mine, Your Honors. Okay. Well, thanks for your argument, Mr. Lysot. We'll go ahead and hear from Mr. Cooley on rebuttal. Thank you, Your Honor. Just a couple points. Again, the court has the authority to remand if it wishes to. Based on the record, I think there's sufficient facts to adjudicate the deficient performance. If you look at trial counsel's testimony at the PCRA hearing, granted it was limited to the alibi. Yeah, I'm not disagreeing with that. It was limited to that. But, you know, the DA asked him, well, what was your defense? And his quote was, to put Mr. Williams as far away from the scene as possible. And that, I think, gave us a window into, like, there were other defenses. Sure. Here's my question for you. And you and Judge Rendell went back and forth on this. And let's just take it as a given for purposes of this argument that we thought, okay, you can go back and you can have a hearing on Martinez to test whether there is, in fact, a claim to prejudice that has some merit. But if you had that hearing and you succeeded in showing that you had, based on Rochon and all these other things, you had a claim that had some merit, would it get you ahead of the game at all? Because once you got to your ineffectiveness of the counsel claim at the trial level, you couldn't talk about Rochon because of 2250-42. Maybe I'm, I don't know whether I'm making myself clear or not. I would just simply refer back to Richardson because I think what you're asking has already happened in this circuit, is that there was a remand where three trial attorneys testified. Legitimate court considered those facts. And, again, those facts were not presented to the state court regarding Richardson's sentencing claim. Assume that's true and it already happened. Does that make it right? I mean, I'm asking you whether 2250-42. It makes it right. If you're willing to do it for Mr. Williams, it makes it right. I mean, based on precedent, yes, it makes it right because I'm assuming the court wouldn't enter an order that's wrong, I mean, an opinion that's wrong based on the law. Okay. Would that be an adequate response? I mean, I would just refer back to Richardson. And, again, one comment on Clark, and I briefed it and I absolutely agree with you, Judge Jordan. Clark is not consistent with Strickland. And, again, we don't need to apply the clearly established 2250-4D, but it is inconsistent. I understand what Ryan's argument is, but it turns the compulsory process and write the counsel clauses on its head. If, like, why would they even create a compulsory process clause to produce people like this? And I'll be honest. I have litigated many PCRAs in Philly County and across the state where this is the fact item. There is a witness who I make, you know, they interview somebody. They don't report it electronically. They write a statement, and it's signed remarkably by this witness. At trial, this witness is not the most willing witness, but they get a bench warrant for him, produce his appearance at trial, and then on the stand he says, I didn't say this. I simply signed it. I couldn't leave the homicide for umpteen hours. And then what they do is they take that statement under Lively and Brady. They put it in as substantive evidence. That's exactly what could have happened here. State trial counsel did. Okay. If trial counsel had any fear, he could have got that in as substantive evidence. Gotcha. All right. Thanks so much. Appreciate counsel's argument today. We've got the case under advisement, and we will recess court.